JOHN H. EASTWOOD, PLAINTIFF IN ERROR, v. GEORGE E. RUSSELL, DEFENDANT IN ERROR.

Argued March 13, 1911—Decided September 29, 1911.

1. The act of 1906 (*Pamph. L.*, *p.* 432), amending "An act to tax intestates' estates, gifts, legacies, devises and collateral inheritance in certain cases" (*Pamph. L.* 1894, *p.* 318), being unconstitutional, by reason of its defective title, in nowise changed or affected the prior act of 1894, which act continued to exist as if the amendment of 1906 had never been passed.

2. A tax levied upon property passing by will, by virtue of the act of 1894 (*Pamph. L.*, *p.* 318), is not a property tax to which the provision of the constitution, article 4, section 7, paragraph 12, was designed to apply.

3. It is not permissible for a person assessed under the act of 1894 (*Pamph. L.*, *p.* 318), upon property acquired by him by will, to assert that the title of that act does not express its object, in that the title contains the word "gifts," while the body of the act places a tax on property transferred by "deed, sale or gift * * * to take effect * * * after the death of the * * * grantor or bargainor," and that the alleged extra titular objects cannot be cut out of the act, because the act, in this regard, is severable, allowing the excision of the asserted objectionable features.

4. Where a person assessed under the act of 1894 (*Pamph. L., p.* 318), contends that the property, which is the subject of the tax passed to him, not by will, but by contract between him and the testator, and presents *ex parte* affidavits to the surrogate, to prove such agreement, and the Supreme Court on *certiorari* removing said assessment for review, makes no finding of fact, the question of the force or competency of such affidavits does not come before this court upon writ of error reviewing the judgment of the Supreme Court.

On error to the Supreme Court.

For the plaintiff in error, *Lum, Tamblyn & Colyer* and *Frank H. Sommer.*

For the defendant in error, *Edmund Wilson,* attorney-general.

The opinion of the court was delivered by

VOORHEES, J. On March 24th, 1908, John Eastwood, a resident of Belleville, in Essex county, died leaving a will, wherein he appointed John H. Eastwood, the plaintiff in error, his executor, to whom he devised and bequeathed, with a few exceptions, his entire estate valued at about seven hundred thousand dollars.

The estate so passing to and claimed by John H. Eastwood, a relative of the testator, but not a son or within the exempted degrees, was assessed March 15th, 1909, by the surrogate of Essex county under the so-called Collateral Inheritance Tax act of 1894 (*Pamph. L., p.* 318), and the tax ascertained to be $35,435.65.

The imposition of this tax was resisted by John H. Eastwood, but was affirmed by the Supreme Court. This writ of error is sued out to review that judgment.

By act approved May 15th, 1906 (*Pamph. L., p.* 432), sections 1 and 4 of the above act of 1894 were amended.

In *Neilson* v. *Russell,* 47 *Vroom* 655, this court held that the purpose of the act of 1894 was not to impose a transfer or succession tax, but legacy duties.

In *Dixon* v. *Russell,* 50 *Vroom* 490, we likewise held that
the title of the amendment of 1906 "contains no intimation
that the purpose of the statute as amended is to impose taxes
upon the transfer of property which has been bequeathed by a
testator," and declared the act of 1906 invalid because its ob-
ject was not expressed within its title. *Const., art.* 4, §
7, ¶ 4.

It is here argued by the plaintiff in error that the amend-
ment of 1906 (so far as concerns matters arising after its
enactment) wiped out and rendered nugatory sections 1 and
4 of the act of 1894 by substituting the act of 1906, and the
latter act, having been declared unconstitutional, as above
stated, there was no legislation extant at the time of the tes-
tator's death capable of sustaining the tax.

The answer to this proposition is that the act of 1906 being
unconstitutional, was without effect at all upon the act of
1894. *Central Railroad Company of New Jersey* v. *State
Board of Assessors,* 40 *Vroom* 786, is in point, where it is
said:

"The fact that the supplement of May 18th, 1906, is void
does not in our judgment operate to destroy the act itself.
The supplement never had any vitality. It is as if it had
never been passed, for it cannot be conceived that the legisla-
ture intended that the whole act should fail unless the pro-
vision of the supplement could be engrafted upon it."

The contrary of this proposition is, however, insisted upon
by the plaintiff in error to this extent, as set out in his brief:
"An unconstitutional statute is nevertheless a statute, that
though it be judicially declared unenforceable because in con-
flict with the organic law, still remains an enactment of leg-
islative intent which the courts must reckon with and which
the judicial department has no power to expunge."

We are referred to the following cases as supporting this
principle: *Rader* v. *Township of Union,* 10 *Vroom* 509; 12
*Id.* 617; *Attorney-General* v. *Anglesea,* 29 *Id.* 372; *Rutgers
College* v. *Morgan,* 41 *Id.* 460; *Riccio* v. *Hoboken,* 40 *Id.*
664; *Lang* v. *Bayonne,* 45 *Id.* 455; *Smith* v. *Howell,* 31 *Id.*
384; *Allison* v. *Corker,* 38 *Id.* 601.

The theory is that, because an unconstitutional act may form the basis of an amendment which eliminates its vice, and thereby become a valid enactment, there must be substance in the previous faulty legislation to give this result. *Allison* v. *Corker, supra,* is the leading case, holding that the judicial department proceeds with reference to unconstitutional legislation *in personam,* and therefore adjudged an act merely unenforceable, but still existent and capable of vitalization.

It is to be noted that this case, as well as those above cited which bear upon this subject, carefully limits its scope to acts, the body of which contains the infirmity, and not to those having a faulty title.

Aside, however, from this consideration, it is not perceived how an amendatory act unenforceable, if you will, because of a title defective, so as to be always and under all circumstances ineffective, can be held to have changed, or in any way modified the prior valid act upon which it was sought to be engrafted. As above said, in it, it wrought no change, hence the original act never passed out of existence, and needed no revivifying. Therefore, the effect of Dixon *v.* Russell was not to revive the act of 1894, but to declare that it had in no way been altered by the attempted amendment of 1906.

The dangers inhering in holding that abortive attempts to alter laws should have the effect of nullifying the law as it stood before, are too evident to require any comment. It is enough to suggest that a yielding to this argument might have resulted in the abolition of the Court of Oyer and Terminer and the county courts in 1895, when the unconstitutional acts, making the county judges elective (*Pamph. L.* 1895, *pp.* 323, 535, 647), were declared void in *Schalk* v. *Wrightson,* 29 *Vroom* 50, and in *Johnson* v. *State,* 30 *Id.* 271, 535, and might have rendered insecure the practice in error when the legislature attempted to provide for a review of the facts by writ of error, at first in 1890 (*Pamph. L., p.* 33), declared unconstitutional in *Falkner* v. *Dorland,* 25 *Id.* 409, and in *Central Railroad of New Jersey* v. *Tunison,* 26 *Id.* 561; and

again in 1899 (*Pamph. L., p.* 323) declared invalid in *Flanigan* v. *Guggenheim Smelting Co.,* 34 *Id.* 647.

*Lang* v. *Bayonne, supra,* is not pertinent.   The learned Chief Justice in that case said:

"I am unable to accept as sound doctrine * * * that an unconstitutional law is void *ab initio* and affords no protection for acts done under its sanction," and proceeded to hold that it must be regarded as valid, until declared unconstitutional, as far as individual judgment and obedience thereto are involved.   It must also be borne in mind that when the judgment of a court declares what the law is, that declaration means that it has always existed as so declared.

The act of 1906, being unconstitutional, by reason of its defective title, in nowise changed or affected the prior act of 1894, which act continued to exist as if the act of 1906 had never been passed.

But the plaintiff in error attacks the act of 1894 itself as unconstitutional, and argues that the imposed tax should be set aside.

The reasoning is that the right to acquire property through acts *inter vivos* is a natural and unalienable right, included in the constitution, section 1, article 1 (*Brennan* v. *United Hatters,* 44 *Vroom* 729), while the right of acquisition, through intestate succession or testamentary disposition, is a mere creature of the law, existing by the favor of the state.

The argument further continues that "property" acquired by either of these two methods is subject to taxation, but only in the manner prescribed by article 2, section 7, paragraph 12 of the constitution, reading, "Property shall be assessed for taxes under general laws and by uniform rules, according to its true value."   So if the imposition made by the act of 1894 is a tax on property, it must fall, because of the various exemptions made by the act, but if an exaction upon the succession, it may be justified because that succession exists by the grace of the state, such not being a direct tax upon property. But because there is united in the act as well property transferred by "deed, grant, sale or gift made or intended to take effect in possession or enjoyment after the death of the grantor

or bargainor," rights acquired directly from acts *inter vivos,* that acquisition is a right not given by the grace of the state, and the imposition, though termed a succession tax, is in reality a tax upon property.

The plaintiff in error has not acquired property by an act *inter vivos,* and therefore that aspect of the statute is not here involved. What passed to him, and, so far as this case shows, is claimed by him, clearly must be in virtue of the gracious policy of the state in granting to him a privilege to acquire it through a testament, and not in the assertion of his right "by deed, grant, sale or gift." Therefore we do not find it necessary to deal with the contention that the tax is a property tax, to which the provision of the constitution was designed to apply. In *Neilson* v. *Russell, supra,* a legacy duty was declared to be imposed by the act. That is not a tax regulated by the above paragraph of the constitution. This contention, therefore, fails.

But it is further urged that the title of the act of 1894 does not express its object, in that the title contains the word "gifts," while the body of the act places a tax on property transferred by "deed, grant, sale or gift * * * to take effect * * * after the death of the * * * grantor or bargainor." We find it unnecessary to consider this argument, for the reason that the plaintiff in error must derive his right to the property in question under a will and not as a grantee, or bargainee, as hereinbefore noted and as hereinafter explained, and therefore this attack upon the statute cannot render the act inoperative, as against the plaintiff in error, if there may be exscinded from the body of the act those objects asserted by him to have been omitted in the title.

The rule in such cases was laid down in *Rader* v. *Township of Union,* 10 *Vroom* 510, as follows:

"It will answer every purpose of law, and of public policy, to declare, in such cases as the one now under advisement, the unlawful superaddition to the declared object of the statute to be inoperative and void. This can always be done when the objectionable feature stands by itself, and is separable as a

distinct thing, from the body of the act, and there is no reason to suppose that the portion thus eliminated constituted an essential motive to the enactment of the law."

But it is said that the alleged extra titular objects cannot be cut out of the act, because the enactment was of a comprehensive scheme of taxation, and the view is not warranted that the legislature would have passed such a statute for the remainder only.

The very distinction which counsel makes between the privilege of the transmission of property by testament and succession and the right to transfer it by contract, if it be a valid distinction, is so plain that it would seem to overthrow the argument that the two provisions of the act are so inseparably connected that the whole must fall, and that there was no legislative intent to pass the act, save as a whole.

It seems to be clear that this portion can be separated from the rest, in each instance, and there will then remain a complete valid statute, embracing the primary object of the legislature, capable of being enforced afterwards, and that such remainder is not dependent upon the eliminated portion, but on the contrary, is quite independent thereof, and separable therefrom so as to overcome any presumption of legislative intent to pass the act only in its original entirety. *New Brunswick* v. *Fitzgerald,* 19 *Vroom* 457; *Johnson* v. *State,* 30 *Id.* 535; *Fagan* v. *Payne,* 46 *Id.* 851.

Still another position taken against the tax, is that John H. Eastwood became entitled to the property by virtue of a contract made between him and the testator in the latter's lifetime, and not by testamentary succession.

The alleged agreement is set forth in certain *ex parte* affidavits presented to the surrogate who fixed the tax at the time the matter was before him for that purpose.

The substance of the agreement thus displayed is that when the plaintiff in error was less than a year old, his parents and the testator agreed that testator would adopt the infant and maintain, educate and take care of him, and, subsequently, to the adoption, it was the understanding and agreement between the testator and the infant that in consideration of his con-

tinuing to live with the testator (to whom he had gone in infancy), as a son and of his valuable services rendered to the testator, the testator would treat him as a son, and upon testator's death, he should receive testator's property.

The attempted proof of the facts, by *ex parte* affidavits, was in no way effective to bind the state in an adjudication by the surrogate, whether he was or was not invested with jurisdiction for that purpose.

They were not competent proof in the Supreme Court in the *certiorari* proceeding. *Klein* v. *Adams Express Co.*, 32 *Vroom* 530; *State* v. *Gardner*, 5 *Id.* 327. No affidavits were taken in that court pursuant to the rule granted for that purpose, and no finding of fact was made by the Supreme Court.

If the Supreme Court had made a finding favorable to the contention of the plaintiff in error, there would be a question whether there was any testimony to support such finding, but inasmuch as the court has not made any such finding, the question as to the force or competency of the affidavits is not before us. *Sisters of Charity* v. *Cory, Collector*, 44 *Vroom* 699. For aught that appears in the record, the plaintiff in error claims under the will of the testator.

The judgment of the Supreme Court must be affirmed, and it is so ordered.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, SWAYZE, TRENCHARD, PARKER, BERGEN, VOORHEES, BOGERT, VREDENBURGH, CONGDON, JJ.   11.

*For reversal*—None.